UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| ARTHUR RONESS, | Case No. C18-1030-RSM |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| T-MOBILE USA, INC., a Delaware Corporation, | |
| Defendant. | |

This matter comes before the Court on Defendant T-Mobile USA, Inc. ("T-Mobile")'s Motion for Partial Summary Judgment, Dkt. #29. T-Mobile seeks summary judgment on whether Plaintiff Arthur Roness, as a matter of law, was qualified to perform the essential functions of his Senior Technician, Data Center position. Plaintiff opposes T-Mobile's Motion in its entirety. Dkt. #40.

Having reviewed the Motion, Plaintiff's Response, Defendant's Reply, and all documents submitted in support thereof, the Court GRANTS T-Mobile's Motion for Partial Summary Judgment.

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 1

# I. BACKGROUND

Plaintiff started working for T-Mobile around September 2000 and currently holds the position of Senior Technician, Data Center at the Snoqualmie Data Center. Dkt. #23 at ¶¶ 1-2. T-Mobile has two data centers in the western half of the United States, East Wenatchee and Snoqualmie, which are both located in Washington state. Dkt. #30-1 at 69-70. T-Mobile's data centers are facilities that house the company's computer servers for its telecommunications system, which routes traffic for banking, government contracts, and Enhanced 911—a system mandated by the Federal Communications Commission that is used to provide emergency dispatchers the location of 911 callers. Dkt. #32-1 at 96; Dkt. #29 at 2.

Data technicians at Snoqualmie maintain the facilities and respond to abnormal conditions as they arise. One data technician must be "on call" at all times outside the data technicians' regularly-scheduled day shifts. Dkt. #30-1 at 14, 16-17, 19. When a data technician is on-call, he typically does not work a full day shift because of the hours he worked at night. *Id.* at 59. During Plaintiff's time at Snoqualmie, the on-call responsibility was assigned on a rotating basis among the three data technicians. Determining who was on-call was a "fly-by-the-night type of thing" as opposed to a set schedule, and technicians would have to cover for one another if someone was sick or on vacation. *Id.* at 26. On-call rotation was not a desirable task, and data technicians typically did not volunteer to take on more rotations. *Id.* at 34.

Plaintiff worked at T-Mobile's Nexus Data Center ("Nexus") until it closed around 2016, after which he moved to the Snoqualmie Data Center ("Snoqualmie"). Dkt. #30-1 at 19. The Snoqualmie Data Center distinguishes between data technicians on the "facilities" side

versus the "network" side, but on-call rotation was a requirement for both sides. Plaintiff covered the on-call responsibility for both the "facilities" and "network" sides since 2006. *Id.* at 8. Plaintiff's work schedule was typically 5:00 or 5:30am to 2:00 or 3:00pm, but his hours shifted depending on whether he worked at night to fix a network server issue. *Id.* at 29-30. Plaintiff had on-call responsibilities every third week and would have to respond to an emergency almost every time he was on call. *Id.* at 34.

T-Mobile has used third-party contractors to assist with "racking and stacking" of the servers, replacing switches, troubleshooting, or helping with electrical and cabling work. Plaintiff states that while he was at Nexus, contractors from third-party company Telcoprime participated in on-call rotation at the Snoqualmie Data Center. Dkt. #30-1 at 19. Once Nexus shut down, T-Mobile stopped using the contractors from Telcoprime. Now, contractors from a different third-party company, BlueStream, cover excess work on an as-needed basis, but they only perform physical labor and are not given internal access to the T-Mobile network. Dkt. #30-1 at 62. Supervisor, Robert Okrie, relies on his staff to handle the emergency work at night and would only use contractors "if there was more work than what [his] staff could do." *Id.* at 64. Plaintiff is not aware of any current or former T-Mobile data technicians at Snoqualmie who have been "permanently" relieved from their on-call responsibilities. Dkt. #32-1 at 22-23.

On March 22, 2018, Plaintiff provided T-Mobile with a letter from his doctor, Dr. Randip Singh, which states that he diagnosed Plaintiff with Obstructive Sleep Apnea and requests that T-Mobile allow Plaintiff to "work Monday thru Friday 05:00am – 03:00pm excluding weekends." Dkt. #30-1 at 45. The week after Plaintiff provided his doctor's letter to T-Mobile, T-Mobile placed Plaintiff on unpaid leave of absence. Dkt. #16-1 at ¶¶6-7. On the

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 3

basis that Plaintiff's medical documentation indicated his work restrictions were "permanent," and because Plaintiff represented the same, T-Mobile's Accommodations Manager determined that T-Mobile could not reasonably accommodate Plaintiff in his current position as a Senior Technician at the Snoqualmie Data Center due to mandatory on-call rotation responsibilities. Dkt. #33 at ¶¶10-11. Starting May 9, 2018, T-Mobile placed Plaintiff in its Alternative Placement Program where he would meet regularly with an Accommodation Manager for ninety days to help find him alternative employment with T-Mobile. *Id.* at ¶¶11-12.

On June 13, 2018, Plaintiff filed this action in King County Superior Court. Dkt. #1-1. Plaintiff claims that T-Mobile violated his rights under the Washington Family Leave Act ("WFLA"), the federal Family and Medical Leave Act ("FMLA"), and the Washington Law Against Discrimination ("WLAD") by placing him on continuous unpaid leave of absence rather than accommodate his disability or allow him to use intermittent leave. Dkt. #1-1. On July 13, 2018, T-Mobile timely removed the action to this Court. Dkt. #1.

T-Mobile now moves for summary judgment on whether Plaintiff, as a matter of law, was qualified to perform the essential functions of his Senior Technician, Data Center position. Dkt. #29.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at

248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. On-Call Availability as "Essential Function" of Senior Technician Job**

T-Mobile moves for summary judgment on whether the incontrovertible evidence, viewed in a light most favorable to Plaintiff, establishes as a matter of law that (a) the on-call responsibilities are "essential functions" of the Senior Data Technician position; and (b) Plaintiff was not qualified to perform these essential functions. To establish a prima facie case of failure to reasonably accommodate a disability under the Washington Law against Discrimination ("WLAD"), a plaintiff must show that: (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job, (2) the employee was *qualified to perform the essential functions* of the job in question, (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations, and (4) upon notice, the employer failed to affirmatively adopt measures that were

available to the employer and medically necessary to accommodate the abnormality. *Davis v. Microsoft Corp.*, 149 Wash. 2d 521, 532, 70 P.3d 126, 131 (2003) (emphasis added). T-Mobile seeks summary judgment on the second element, arguing that there is no dispute of material fact that Plaintiff was not qualified to perform the essential functions of the Senior Technician, Data Center position. Dkt. #29 at 8.

### 1. Essential Functions of Senior Technicians at Wenatchee

Plaintiff's response to T-Mobile's Motion mostly focuses on whether on-call rotation is an essential function for data technicians at the East Wenatchee Data Center. *See generally* Dkt. #40. However, the function of on-call rotation at Wenatchee is irrelevant to the issue on summary judgment review: whether *Plaintiff's* position, Senior Data Technician at the *Snoqualmie* Data Center, requires on-call rotation as an essential function. Dkt. #29 at 1-2 (asking the Court to conclude, as a matter of law, that Plaintiff was not qualified to perform the essential functions of *his* Senior Technician, Data Center position). The Senior Technician position at Wenatchee is not analogous to Plaintiff's Senior Technician position at Snoqualmie, which—as Plaintiff admits—is only one-third the size of the Wenatchee Data Center. At Snoqualmie, a total of four employees worked on both the network and facility side. Dkt. #40 at 2. Because there is not enough work to staff the Snoqualmie Data Center twenty-four hours a day, seven days a week, the technicians there operate only in dayshifts with an on-call rotation to cover night and weekend work. Dkt. #30-1 at 56. Wenatchee, in contrast, operates in three shifts (dayshift, evening shift, and midnight shift) to cover the entire twenty-four-hour period. Dkt. #40 at 2, 5. An analysis of Wenatchee's shifts is therefore immaterial to understanding how on-call rotation functioned at Snoqualmie to keep operations running 24/7. Plaintiff's

attempt to equate the two positions is unavailing, given that he has consistently sought *reinstatement* to his Snoqualmie position—not reassignment to another data center. *See* Dkt. #1-1 at ¶9 ("Plaintiff requested that he be reinstated . . . ."); ¶¶ 13, 17, 21 (claiming Plaintiff is entitled to reinstatement). While Plaintiff tries to raise a factual issue of whether Plaintiff's accommodation request of reassignment to Wenatchee was reasonable, Dkt. #40 at 10, the issue of reasonable accommodation through relocation is not before the Court on this summary judgment motion.

### 2. Essential Functions of Plaintiff's Position at Snoqualmie

T-Mobile claims that the incontrovertible evidence shows that participation in the on-call rotation was an "essential function" of Plaintiff's position at Snoqualmie and, because of Plaintiff's claimed restrictions, he was not qualified to perform the essential functions. The term "essential function" is derived from the WLAD's federal counterpart, the Americans with Disabilities Act ("ADA"), and has been defined as follows by the federal Equal Employment Opportunity Commission: "The term essential functions means the *fundamental job duties* of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the *marginal* functions of the position." *Davis*, 149 Wash. 2d at 533, 70 P.3d 126 (citing 29 C.F.R. § 1630.2(n)(1)(2002) (emphasis added)). The term "essential functions" refers "not only to the tasks and activities that are indispensable to the job, but also to the 'conduct' and 'service' required of the employee." *Id.* at 533–34, 70 P.3d 126. To determine whether a function is essential, courts consider evidence such as "the employer's judgment as to what functions of a job are essential; job descriptions prepared before advertising or interviewing applicants; the amount of time spent on the job performing the

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 7

function; the consequences of not requiring the applicant or employee to perform the function; and the work experience of current and former employees." *Bates v. United Parcel Services, Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (citing 42 U.S.C. § 12111(8) and 29 C.F.R. § 1630.2(n)(2)(iii)).

When considering the specific facts of on-call rotation at Snoqualmie, there is no genuine dispute that availability for call is an "essential function" for Senior Data Technicians at that center. First, the nature of T-Mobile's data center operations requires functionality 24/7 to support communications for banking, government contracts and Enhanced 911. Dkt. #30-1 at 77. Plaintiff does not dispute this 24/7 aspect of the data center's operations and acknowledges that someone, regardless of who, must be available to respond to abnormal conditions. *See id.* at 31. Additionally, the ADA definition of "essential function" clarifies that an employer's judgment on this issue carries evidential weight. *See* 42 U.S.C. § 12111(8). Both Plaintiff's immediate supervisor and the senior manager for data center operations in Washington believe that on-call, evenings, and weekend hours are an "essential function" of the Senior Technician, Data Center position at Snoqualmie. Dkt. #30-1 at 80; Dkt. #33 at ¶¶8-9. Furthermore, to Plaintiff's knowledge, no current or former T-Mobile data technicians at Snoqualmie have been "permanently" relieved from their on-call responsibilities. Dkt. #32-1 at 22-23. Although Plaintiff claims that other technicians at the Snoqualmie Data Center have been temporarily relieved from the on-call rotation, *see* Dkt. #40 at 10, permanent relief from call is readily distinguishable from temporary exclusions. *See Rehrs v. Iams Co.*, 486 F.3d 353, 358 (8th Cir. 2007) (temporary exception from shift rotation does not demonstrate that shift rotation was not essential). Moreover, as a matter of public policy, a company's previous accommodations of

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 8

employees beyond what the law requires does not create a genuine issue of material fact as to whether a reasonable accommodation was available to Plaintiff. *See Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995) ("[I]f the employer . . . bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.").

Plaintiff argues that based on the job description for "Senior Technician, Data Center Facilities," a genuine dispute of material fact exists as to whether on-call availability is an "essential function" of the position. Both parties provide job descriptions for Senior Technician, Data Center Facilities. *Compare* Dkt. #30-1 at 83 *with* Dkt. #41-3 at 2. The job description Plaintiff relies on states that the position "*might* require on call and off hours support," and that adjusting to a "flexible schedule," including weekend and on-call shifts, is not a cognitive behavioral requirement. Dkt. #41-3 at 2-3 (emphasis added). In contrast, the job description provided by T-Mobile states: "Ability to participate in an on-call rotation *is required*." Dkt. #30-1 at 84 (emphasis added). Neither job description specifies a data center location, and only Plaintiff's job description provides a "last edited" date of October 11, 2017. Likewise, the parties' briefings do not clarify which job description was in place for Plaintiff's position at Snoqualmie at the time he requested accommodation. However, both job descriptions list "respond to abnormal conditions"—which can arise anytime, day or night—as "essential" to the Senior Technician position. Dkt. #41-3 at 2; Dkt. #30-1 at 1. Whether a T-Mobile data center operates in three shifts (like Wenatchee) or uses a rotating on-call (like Snoqualmie) to provide response coverage for "abnormal conditions" depends on the data center. *See* Dkt. #40 at 2, 5. For that reason, the slightly different language in the two job

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 9

descriptions does not raise a dispute of material fact that on-call rotation was not an essential function at Snoqualmie. Rather, it merely reflects the variability of the role of on-call rotation for Senior Technicians across T-Mobile's data centers.

Plaintiff also contends that on-call availability is not an essential function at Snoqualmie because "those functions would have been transferred over to the remaining members of the Snoqualmie team just like what happened when Mr. Roness was placed on unpaid leave." Dkt. #40 at 9. Plaintiff cites senior manager Robert Gray's deposition as support for this proposition, wherein Mr. Gray testified that the remaining team members were transferred to Plaintiff's on-call rotation to provide coverage during Plaintiff's unpaid leave. Dkt. #41-1 at 12. The fact that T-Mobile managed to continue meeting its mandatory 24/7 operational support requirement—whether through contractors or through its remaining staff—is not evidence that the on-call rotation is "non-essential." *See Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 78 (1st Cir. 2010) (Voluntary accommodations made by employer following plaintiff's injury do not alter court's assessment of "essential functions"); *Robert v. Bd. Of Cnty. Comm'rs of Brown Cnty.*, 691 F.3d 1211, 1217 (10th Cir. 2012) (Employer's tolerance of a plaintiff's temporary nonperformance of essential duties cannot be used as evidence that those duties are nonessential.). On the contrary, the reassignment of Plaintiff's on-call rotation simply shows that Plaintiff's absence required T-Mobile to reassign its staff in order to continue meeting its 24/7 operational requirement.

Lastly, Plaintiff's argument that T-Mobile could simply reassign his work to third-party contract workers is likewise unavailing. *See* Dkt. #40 at 9. While the Court notes Plaintiff's pending motion to compel production of materials related to T-Mobile's third-party contractors,

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 10

*see* Dkt. #34, additional information on T-Mobile's contractors is not relevant to whether on-call availability is an "essential function" of Plaintiff's position. Third-party contractors typically handle physical labor and are not provided internal access to the T-Mobile network, and are thus not interchangeable with Senior Technicians. Dkt. #30-1 at 62. Their as-needed support may allow T-Mobile to maintain its 24/7 operations, but their support does not diminish the need for T-Mobile's permanent staff at Snoqualmie to remain available to take calls. Consequently, the fact that supervisor Robert Okrie has relied on BlueStream contractors to cover excess work on an as-needed basis does not undermine T-Mobile's assertion that on-call rotation is an "essential function" of Senior Technicians at Snoqualmie.

For the foregoing reasons, the Court finds that the incontrovertible evidence, viewed in a light most favorable to Plaintiff, establishes as a matter of law that on-call responsibility is an "essential function" of the Senior Data Technician position at Snoqualmie.

### 3. Plaintiff's Work Restrictions

Lastly, Plaintiff claims that T-Mobile mischaracterized his time restrictions and that a genuine dispute of fact exists as to whether he was actually restricted to working between the time period from 5:00am to 3:00pm. Dkt. #40 at 11. The restrictions imposed by Plaintiff's medical condition directly bear on whether he is "qualified" to perform essential functions with his impairment. Plaintiff claims that instead of restricting him to his regular shift time, his doctor cared more about Plaintiff getting eight hours of "consistent, uninterrupted sleep *regardless of what shifts he worked.*" *Id.* (emphasis added). Plaintiff's only support for this proposition is his deposition testimony, where he attempted to "clarify" his earlier testimony about what his doctor intended in his note: "[Dr. Singh] was more concerned with me getting,

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 11

you know, a good night's sleep than like, say, the 5:00 to 3:00 schedule, as long as I was able to get it however I could get it." Dkt. #41-2 at 9. In addition to speculating into Dr. Singh's state of mind when he wrote the letter, Plaintiff's argument contradicts both his earlier testimony confirming the restrictions set forth in Dr. Singh's letter, Dkt. #44-1 at 6, as well as the plain language of Dr. Singh's letter, which reads as follows:

> I advise against the proposed shift change for Arthur Roness. Work shift changes may have medical complications as the normal circadian rhythm will be disturbed. Patients with Obstructive Sleep Apnea are more sensitive than others to shift changes, therefore I ask that you take into consideration the information provided and allow this patient to work Monday thru Friday 05:00 am -03:00pm excluding weekends.

Dkt. #30-1 at 45. The letter plainly requests that Plaintiff's hours be confined to those of his regular shift, from 5am to 3pm.

Furthermore, when T-Mobile's Accommodation Manager sought clarity on the restrictions set forth in Dr. Singh's letter, neither Plaintiff nor his doctor returned her follow-up questionnaire. Dkt. #33 at ¶¶ 6-7. Instead, Plaintiff "indicated the physician told us [T-Mobile] to move forward with the information on hand." Dkt. #38-1 at 2. The language of Dr. Singh's letter, which was never supplemented, clearly restricts Plaintiff from working hours outside his regular shift of 5am to 3pm, and Plaintiff has reiterated this same restriction throughout his briefings. *See, e.g.*, Dkt. #14 at 3 ("Mr. Roness provided T-Mobile with Dr. Singh's letter requesting that he not work in excess of his regular shift due to his serious health condition."); Dkt. #21 at 3 ("To avoid aggravating his condition, his physician recommended that he only work his regular shift hours and no longer work the on-call and evening/weekend hours. . . ."). Considering these facts in the light most favorable to Plaintiff, there is no genuine dispute of

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 12

fact that Plaintiff represented to T-Mobile that he was restricted to working his regular shift hours from 5am to 3pm and could no longer take call outside those hours.

Accordingly, the Court finds no genuine dispute of material fact that on-call availability is an "essential function" of the Senior Technician position at Snoqualmie, and that because of Plaintiff's restrictions, he could not perform the essential functions of the position.

### C. Request for Continuance under Rule 56(d)

Plaintiff requests that if the Court finds he has not presented facts sufficient to create a genuine issue of material fact, it should grant a continuance to allow Plaintiff to obtain the additional evidence. Pursuant to Federal Civil Rule 56(d), a Court may defer considering a summary judgment if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. Fed. R. Civ. P. 56(d). Plaintiff argues that the facts essential to justify its opposition would be obtained through depositions of technicians and senior technicians at the Wenatchee Data Center. Dkt. #40 at 12. However, as explained above, the job duties and responsibilities of Data Technician at the Wenatchee Data Center are not relevant to the issue before the Court of whether on-call rotation was an essential function of Plaintiff's position at the Snoqualmie Data Center. Accordingly, the Court declines Plaintiff's request for a continuance under Rule 56(d).

### III. CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS that Defendant T-Mobile's Partial Motion for Summary Judgment, Dkt. #29, is GRANTED.

1     DATED this 9 day of July 2019.

*[signature]*

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE
